PAUL HIRSCH, ROBERT J. FINK, AND PAUL HIRSCH AND ROBERT J. FINK, D/B/A HAYMAKER, HIRSCH & FINK *v.* MERCHANTS NATIONAL BANK & TRUST COMPANY OF INDIANA.

[No. 1-1074A144. Filed November 13, 1975. Rehearing denied December 10, 1975.]

*Paul Hirsch, Robert J. Fink, Haymaker, Hirsch & Fink,* of Indianapolis, for appellant.

*William P. Wooden, Wooden, Stark, McLaughlin & Sterner,* of Indianapolis, for appellee.

LOWDERMILK, J.—Plaintiff-appellee Merchants National Bank & Trust Company of Indianapolis (Merchants) instituted this action to recover for breach of lease for office space entered into between Merchants and the defendants-appellants, Paul Hirsch, Robert J. Fink, and Paul Hirsch and Robert J. Fink, d/b/a Haymaker, Hirsch & Fink, (Hirsch).

The parties hereto had entered into a number of lease agreements over the years and the lease now in dispute was a continuation of the same and was entered into for a term of two years from July 1, 1970 to June 30, 1972.

The pertinent portions of the lease which are the crux of this lawsuit are as follows, to-wit:

"7. That in case lessee shall vacate said premises, during the life of this lease, the lessor may, at its option relet said premises for such rent and upon such terms as lessor may see fit, and if a sufficient sum shall not be thus realized monthly, after paying the expense of such reletting and collecting the rent accruing from such reletting, to satisfy the monthly rent above provided to be paid by this lessee, then the lessee will pay and satisfy such deficiency, monthly.

\* \* \*

". . . and the occupation of said premises by lessee after the expiration of this lease or a forfeiture thereof shall not give lessee any right as a tenant, but lessee may be expelled at any time without notice, and lessee hereby agrees to pay reasonable attorney's fees, court costs, and any expense which lessor may incur in enforcing the conditions of this contract."

The lease further stipulated an annual rental of $4,224.00 with installments payable monthly in advance in the sum of $352.00.

Hirsch paid the rent until they saw it was impractical to maintain the offices in the bank building and gave oral notice, which was followed by written notice, of Hirsch's intention to forfeit the lease. Hirsch defaulted the February 1, 1971 payment and moved from the premises and turned the keys over to Merchants.

Merchants brought its action to recover for non-payment of rent, which resulted in a jury's verdict in their favor of $5,800.00.

Hirsch contends that it was the obligation of Merchants to make a reasonable effort to relet the space in mitigation of its damages before the expiration of the lease term. The record discloses that Mr. Applegate, who is in charge of rentals for Merchants, showed the office space to prospective renters on at least two occasions but was unable to rent the space. Hirsch contends that the showing of the space was not

sufficient to show good faith on the part of Merchants to mitigate the damages; that it was incumbent upon Merchants to advertise and speak to other people and make diligent effort to rent the space and the failure so to do released Hirsch from any liability for unpaid rent during the term of the lease on which he defaulted.

The issues presented for review are:

1.  That the verdict is contrary to law;

2.  That the verdict is contrary to law for the reason that the court erred in permitting the jury to view certain evidence and hear certain testimony presented by the plaintiffs, which testimony and evidence was erroneously allowed, contrary to law; and

3.  The verdict is contrary to law for the reason that the court erred in giving certain of plaintiff's tendered instructions and in refusing to give certain of defendant's tendered instructions.

Hirsch chooses to combine and argue specifications 1, 2 and 3 and we shall treat the three as combined and argued.

Hirsch contends that the lessor, Merchants, must use due diligence to relet the premises when vacated and that the plaintiff has the burden of showing that it did in fact use due diligence in attempting to relet the premises and thereby mitigate damages. Hirsch relies heavily on the case of *Carpenter et ux.* v. *Wisniewski et ux.* (1966), 139 Ind. App. 325, 215 N.E.2d 882, to support this contention. He urges the showing of the premises to two people by Merchants is not adequate to mitigate damages and complains Merchants did not offer to relet the premises at a reduced rate nor did it advertise for tenants for the premises.

In *Carpenter, supra,* it is held that a lessor is required to use such diligence as would be exercised by a reasonably prudent man under similar circumstances. This is a question for the trier of the facts. In *Carpenter, supra,* the burden

of such diligence was cast on the landlord by the reletting clause.

In the case at bar there is no requirement in the contract for the reletting of the premises in case of default by Hirsch. Although there was no mandatory reletting clause in the case at bar Merchants is still required to use such diligence as would be exercised by a reasonably prudent man under similar circumstances to relet the premises if possible. This is a question for the trier of the facts.

Mitigation of damages is a matter of defense which a party held responsible to respond in damages (Hirsch) has the burden of proving, as stated in *Miller* v. *Long* (1956), 126 Ind. App. 482, 131 N.E.2d 348:

"Mitigation of damages is a matter of defense, the burden of proving which is on the party held liable to respond in damages, and the failure of such party to make out his defense cannot affect appellants' (here appellee's) right to recovery. *Mug* v. *Ostendorf* (1911), 49 Ind. App. 71, 96 N.E. 780. The evidence concerning the matters urged by appellants was in dispute and the finding of the court was adverse to appellants. We cannot weigh the evidence." 126 Ind. App. at 501.

In the case at bar the burden of proof was on Hirsch, as there was no reletting clause in the lease. The evidence concerning the matter of mitigation of damages was in dispute and there was evidence presented by each of the parties and the verdict of the jury was adverse to Hirsch. We cannot weigh the evidence. *Miller* v. *Long, supra.*

Hirsch further contends that a surrender occurred by operation of law, based on the following:

1. Merchants' acceptance of keys from Hirsch following abandonment;

2. Merchants' failure to send rental notices covering the entire period from February 1, 1971, the day of the abandon-

ment, until December 1, 1971 (the date Merchants actually took possession to the exclusion of Hirsch and used the premises and for which they have given Hirsch credit in mitigation of damages) ;

3. An alleged failure by Merchants to make any effort to show or relet the leased premises.

Hirsch admits in his brief that Merchants showed the premises to at least two persons. He further contends, however, that Merchants had accepted the keys to the premises in question and that they (Merchants) had for years prior to this time sent rent notices and then suddenly failed to send those notices, which acts were inconsistent with the relationship of lessor-lessee and amounted to a termination by operation of law.

It is only reasonable that Merchants would cease to send rent notices when they had been informed orally and by letter that Hirsch was abandoning the lease and had, in fact, turned the keys over to Merchants and moved out. It is axiomatic that the law does not require the doing of a useless thing.

Hirsch further urges that Merchants' taking the offices over December 1, 1971 and using the rooms for itself was evidence that Merchants considered the lease terminated.

It is our opinion that Merchants acted as a reasonable person would act under the same or like circumstances and readily set in motion its mitigation of Hirsch's damages by taking over the premises on December 1, 1971, and that there was sufficient evidence for the jury to find that Hirsch had voluntarily surrendered the premises and Merchants had a valid right to take possession and thereby mitigate the damages as was their obligation under the law.

The record further discloses that Merchants sought Hirsch's permission prior to showing the leased premises to prospective lessees. Neither did Merchants occupy, alter or remodel the leased premises before 1972.

The court said in *No. Ind. Steel Sup. Co., Inc.* v. *Chrisman* (1965), 139 Ind. App. 27, 204 N.E.2d 668.

> "From our examination of the diverse facts and holdings of the decisions in Indiana on the question of surrender and acceptance by operation of law, we can only conclude that each case must stand upon its own facts, these facts being the acts of the parties." 139 Ind. App. at 34.

There is evidence in the case at bar to support the fact that the lease was not terminated by operation of law, as implied from the acts of the parties.

> ". . . The acts of the parties must be so inconsistent with the subsisting relationship of landlord and tenant, that it may be implied that both lessor and lessee have agreed to consider the lease as ended. . . ." *No. Ind. Steel Sup. Co., Inc.* v. *Chrisman, supra,* at p. 33.

It appears to us that the acts of the parties were such that lessor and lessee did not agree to consider the lease as ended until December 1, 1971.

Hirsch next contends that the court erred in admitting purported business records, being exhibits 2 and 3.

The party making the entries in the business records was in court but was not permitted to testify because she had not been named as a witness in the pre-trial hearing and order of discovery. Ind. Rules of Procedure, Trial Rule 26(B)(3)(i).

Edward L. West, building manager for Merchants, detailed his work and that they made a ledger of the rents and that the original entries were made and kept by Merchants in the regular course of its business under his direct supervision and control as to all leases, including Hirsch's. He further testified that exhibit 3 with respect to Hirsch's lease was prepared under his direction, examined by him, and was accurate; that exhibit 2 was a summary of information contained in plaintiff's exhibit 3.

The shopbook rule concerning business records as an exception to the hearsay rule has been defined in the case of *American United Life Insurance Company* v. *Peffley* (1973), 153 Ind. App. 29, 301 N.E.2d 651, 656, as follows:

> "A synthesis of the Indiana cases treating what modern authorities call the 'business record' exception to the hearsay rule is that documentary evidence is admissible if identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry. . . . (Cases cited omitted.)"

The court correctly admitted into evidence plaintiff's exhibits 2 and 3.

Hirsch next urges that the court erred in permitting attorney Michael Cook to testify concerning attorneys fees for the reason that Hirsch had timely filed a petition for an order to produce under discovery rule TR. 26 requesting a production of the names of all witnesses to be used at the trial and attorney Cook's name was not listed.

The court, over objection, permitted attorney Cook to testify on the issue of attorneys fees.

The record discloses Hirsch failed to claim surprise in the trial court before the testimony of witness Cook or that he was prejudiced by its introduction. Neither did Hirsch move the court for a continuance based upon the introduction into evidence of the testimony of an undisclosed witness. This failure to move for a continuance constitutes waiver of any objection thereto. *Brattain* v. *Herron* (1974), 159 Ind. App. 663, 309 N.E.2d 150; *Hunt* v. *State* (1973), 260 Ind. 375, 296 N.E.2d 116.

There is further evidence that Hirsch was not prejudiced by Cook's evidence in that witness Cook was vigorously cross

examined and his evidence was refuted by another witness called by Hirsch. Neither was Hirsch prejudiced by failure of the court to impose a sanction of not permitting Cook to testify when his identity as a witness was not disclosed in response to the timely discovery motion, inasmuch as there was no motion for a continuance. The matter of imposing sanctions is within the discretion of the trial court. *Sessler* v. *McDougall* (1967), 141 Ind. App. 358, 228 N.E.2d 58.

Hirsch next objects to the giving of Instruction No. 5 on the mitigation of damages. We have carefully reviewed said instruction, along with defendant's written objections filed thereto, and have determined that the written objections do not correctly state the law and that the court correctly submitted Instruction No. 5 to the jury. Further, the court submitted to the jury defendant's tendered Instruction No. 7, as amended, which was a correct statement of the law on the mitigation of damages.

Hirsch next contends that the court erred in submitting plaintiff's Instruction No. 8 to the jury to which Hirsch timely filed written objections.

Contrary to the objection that there is no evidence as to the amount of rental we have determined that there is evidence, or at least evidence from which a jury could have inferred the amount of rental.

Hirsch next complains that it was improper to instruct the jury to award interest at the rate of 8% from the date rent should have been paid to the date of the verdict.

IC 1971, 24-4.6-1-103 (19-12-112) provides, in pertinent part, as follows:

"Date from which interest allowed.—Interest at the rate of eight (8) per cent per annum shall be allowed (a) from the date of settlement on money due on any instrument in writing which does not specify a rate of interest and which

is not covered by IC 1971, 24-4.5 (24-4.5-1-101—24-4.5-6-203), or this article (24-4.6-1-101—24-4.6-1-202)."

The lease shows on its face no rate of interest was specified, hence the above statute would be applicable to the case at bar. Further, the lease provides the amount of yearly rental and that it is payable in equal monthly installments in advance. Hirsch's claim that the amounts involved were unliquidated is without merit. We have heretofore discussed and held that there is no merit to Hirsch's contention that attorney Cook improperly testified as to attorneys fees.

Hirsch's contention that there was no evidence as to the amount of rent lost by Merchants as a result of the breach is without merit. There was conflicting evidence as to the amount of damages and such being the case this court is bound to rely on the amount determined by the jury when there is adequate evidence to sustain the same as we cannot weigh the evidence. *Miller* v. *Long, supra.*

Said instruction is not mandatory in that it does not set out certain facts upon which the jury is directed to reach a certain result. *Perry* v. *Goss* (1970), 253 Ind. 603, 605, 255 N.E.2d 923.

Finally, Hirsch's Instruction No. 11 was given and informed the jury that if it found for Hirsch on the question of rent, then Hirsch was not liable to Merchants for attorneys fees. Instruction No. 8 was a correct statement of law and properly given to the jury.

Hirsch contends the court erred in refusing defendant's tendered Instruction No. 3. The subject and context of said instruction, to the extent proper, was contained in Hirsch's Instruction No. 9 which was given to the jury. In such case, error, if any, in refusing defendant's Instruction No. 3 was harmless. *Brattain* v. *Herron, supra;* 309 N.E.2d at 160.

Hirsch objects to the court's refusal to submit to the jury his Instruction No. 7. The record discloses that the court did give Instruction No. 7. We come to the conclusion that Hirsch inadvertently set out this objection to the refusal of Instruction No. 7 in his brief.

Hirsch's tendered Instruction No. 4 is an attempt to place the burden of proof on Merchants as to mitigation of damages and is an incorrect statement of the law and was properly refused. *Carpenter* v. *Wisniewski, supra; Miller* v. *Long, supra.*

Hirsch's tendered Instruction No. 5 on surrender of lease is an incorrect statement of the law. Instruction No. 5 would tell the jury, among other things, that "a surrender occurs by a yielding up of the leased premises to the lessor. Where the lessor accepts the surrender of the premises and exercises dominion over the subject premises, then a surrender has taken place and the lease is terminated. . . ." We have heretofore cited *No. Ind. Steel Sup. Co., Inc.* v. *Chrisman, supra,* and set forth that each case must stand upon its own facts. Considering the facts of the case at bar and the decisions in Indiana, we necessarily come to the conclusion that the instruction is an incorrect statement of the law. The mere yielding does not constitute a surrender or an acceptance. In *Powell* v. *Jones* (1912), 50 Ind. App. 493, 497, 98 N.E. 646, this court held:

> ". . . But, when there is an express covenant to pay the rent, the mere breaking of the privity of the estate will not release the lessee. . . ."

Hirsch's Instruction No. 6 was properly refused as the same had been adequately covered by other instructions submitted to the jury.

Hirsch's tendered Instruction No. 8 would have told the jury it could consider the motive of Merchants in bringing

this legal action. A careful review of the evidence discloses there was no evidence at trial that the jury could have concluded or even inferred that Merchants had an improper motive in its efforts to mitigate its damages and therefore the instruction was properly refused.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 336 N.E.2d 833.