**DEL E. WEBB REALTY AND MANAGEMENT COMPANY OF COLORADO, as managing agent for PIC Realty Corporation, a Delaware Corporation, Plaintiff-Appellee and Cross-Appellant,**

v.

**Richard E. WESSBECKER, an individual, d/b/a the Clothing Broker, Inc., Defendant-Appellant and Cross-Appellee.**

**No. 79CA0180.**

Colorado Court of Appeals,
Div. II.

Nov. 28, 1980.

Rehearing Denied Jan. 2, 1981.

Certiorari Denied April 27, 1981.

---

Ralph B. Rhodes, Denver, for plaintiff-appellee and cross-appellant.

Allen J. Kincaid, Brush, for defendant-appellant and cross-appellee.

VAN CISE, Judge.

Plaintiff (the landlord) sued defendant (the tenant) for unpaid rent for the period from June 1, 1977 (the date the tenant abandoned the premises), to August 1, 1978 (the end of the term of the lease), and for its attorney's fees and costs. The tenant defended on the landlord's failure to mitigate damages. After a trial to the court, it found in favor of the landlord but also found that it had failed to mitigate its damages. Thus, it entered judgment for the landlord for two months' rent only (at $545 per month) plus attorney's fees and costs ($2,438.60). The tenant appeals both portions of the judgment. The landlord cross-appeals, claiming error (1) in the court's finding that the landlord had failed to mitigate and (2) in the court's not awarding as damages the unpaid rent for the balance of the lease period. We affirm in part and reverse in part.

The parties do not dispute the validity of the lease. Also, they agree that the tenant paid no rent after May and abandoned the premises June 1, 1977, and that the term of the lease expired August 1, 1978. On or about June 10, 1977, the landlord had the locks changed, and thereafter attempted to lease the space.

I.

The propriety of the damage award hinges upon the correctness of the trial court's finding that the landlord had failed to mitigate damages. In this regard, the landlord introduced evidence that it had posted signs advertising the availability of the space, maintained an activity report listing all suites available, transmitted this information to its home office and to real estate brokers, and listed the property with a real estate brokerage company. It produced other testimony purporting to show a serious effort to re-rent the space. However, the evidence was uncontradicted that the landlord at no time tried to re-let the property for the $8 a square foot ($545 per month) called for in the original lease. Its efforts were directed to obtaining a tenant at $11 or $12 per square foot, which it asserted was the current commercial rate.

The lease provides:

"If Tenant shall fail to pay any part of the rent herein provided . . ., then Landlord may either (i) terminate this lease, or (ii) *re-enter the premises . . . and re-let the premises at such rental and upon such other terms and conditions as Landlord in its sole discretion may deem advisable.* In such event, Tenant shall remain liable for the monthly rent reserved in this lease, plus reasonable cost of obtaining possession of and re-letting the premises . . ., less the rents received from such re-letting, if any.

. . . .

"No such re-entry or taking possession of the premises by Landlord shall be construed as an election on its part to terminate this lease . . . ." (emphasis supplied)

The tenant contends that the landlord's efforts to re-let for $11 or $12 per square foot, rather than the $8 charged the tenant in the lease, did not constitute a reasonable attempt to mitigate. Absent the lease provision to the contrary, the tenant's argument would have some merit. However, here the lease agreement quoted above would permit re-letting at the current commercial rate. And, that language, as a clear expression of the intent of the parties, is controlling. *Ruston v. Centennial Real Estate & Investment Co.*, 166 Colo. 377, 445 P.2d 64 (1968).

The tenant had the burden of proving failure to mitigate. *Hoehne Ditch Co. v. John Flood Ditch Co.*, 76 Colo. 500, 233 P. 167 (1925); *Comfort Homes, Inc. v. Peterson*, 37 Colo.App. 516, 549 P.2d 1087 (1976). And the evidence as to this defense must be viewed in light of the lease provisions set forth above. *Carpenter v. Wisniewski*, 139 Ind.App. 325, 215 N.E.2d 882 (1966); *Conder Corp. v. Arlen Realty & Development Corp.*, 529 F.2d 87 (8th Cir. 1976). So viewed, the trial court's finding that the landlord failed to mitigate is not supported by the evidence.

## II.

As to the issue concerning the award of attorney's fees, the lease also provided that:

"If an action shall be brought to recover any rental under this lease, . . . the prevailing party shall be entitled to recover from the other party, as part of the prevailing party's costs, a reasonable attorney's fee, the amount of which shall be fixed by the court and shall be made a part of any judgment rendered."

Therefore, as the prevailing party, the landlord was entitled to a judgment for a "reasonable attorney's fee."

From the record, we agree with the trial court that "there are many cases where attorney's fees exceed the claim . . . . The attorney' fees are well substantiated as far as hours and parts of hours is concerned and the hourly rate does not appear excessive." As stated in *Stovall v. Crosby*, 171 Colo. 70, 464 P.2d 868 (1970):

"The allowance of attorney's fees . . . is within the sound discretion of the trial court, and unless that discretion has been abused, the allowance made . . . will not be disturbed."

We see no abuse here.

That part of the judgment pertaining to attorney's fees and costs in the trial court is affirmed. The part pertaining to damages is reversed, and the cause is remanded for a redetermination of the amount of damages consistent with this opinion. Also, pursuant to the lease provisions, the landlord is entitled to its costs and reasonable attorney's fees on this appeal, in an amount to be determined by the trial court.

SMITH, J., concurs.

BERMAN, J., dissents.

BERMAN, Judge, dissenting in part.

I respectfully dissent from Part I of the majority opinion, and from Part II insofar as it awards attorney's fees incurred on this appeal.

The majority concludes that the lease language permitting the landlord, upon breach by tenant, to "re-enter and re-let the premises at such rental and upon such other terms and conditions *as landlord in its sole discretion may deem advisable*" (emphasis added by the majority) implicitly obviates

the landlord's duty to mitigate damages *reasonably*. As I read the opinion, the majority concludes that the landlord could have attempted, by virtue of the stated lease language, to re-let at any price, even one much higher than that provided in the lease, and still have been found to have satisfied its duty to mitigate. Such a conclusion is tantamount to saying that there was no duty to mitigate *reasonably*, but rather, that an attempt to re-let at an *arbitrary* price would suffice.

I cannot accept the majority's position. I believe that the cited lease language means exactly what it says and no more. And, even if there were uncertainty of meaning, such uncertainty would be resolved against the lessor as the party who drafted the language. *See Perl-Mack Enterprises Co. v. City and County of Denver*, 194 Colo. 4, 568 P.2d 468 (1977). Therefore, the language in question simply permitted the landlord to "re-enter and re-let" on any terms of the landlord's choosing. It *did not say*, contrary to what is implied by the majority, that *a mere attempt* by the landlord to exercise its rights under that language *would also constitute mitigation of damages*. The duty to mitigate *reasonably* cannot be extinguished merely by permissive language granting a landlord the right to "re-enter and re-let."

In this case, it is undisputed that the duty to mitigate existed in the first instance.[1] The landlord as much as conceded the same in a letter to the tenant dated June 8, 1977: "You will, therefore, be advised that [landlord] intends to hold [tenant] responsible for . . . damages that they [landlord] incur as a result of their attempt *to mitigate their damages* . . . ." (emphasis added). And, as has been shown, nothing obviated the landlord's obligation to undertake *reasonable* efforts to discharge its duty.

The question, therefore, is whether the landlord met that obligation. As to that issue, the trial court expressly found:

The evidence is ultimately clear in this case that there was no effort by the landlord to rent the property for the duration of the lease, just to August 1, '78, for $545 or $400, or some amount to lessen the damages.

Now, if, in fact, the going rent at the time was $12 a square foot, there is at least an inference that they could have rented it for $8 a square foot; so at some point, they should have made the attempt to rent it, which they didn't do. That's where I have the problem. I think the rule of law is clear, and I think the evidence is clear.

Those findings are amply supported in the record. I would, therefore, affirm the judgment.

---

1. The trial court, in its findings and conclusions, correctly stated the applicable law:

[T]he general rule is that one who is injured by a breach of contract—and this was a breach of contract—is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damages. They don't have to eliminate, in other words, the resulting damages. They have to minimize, and in an old case in Colorado, *Hoene* [sic] *Ditch Co. v. John Flood Ditch Co.*, the Court says—let me give you a cite—76 Colo. 500 [223 P. 167]—"or the defendant has breached a contract, it is the duty of the injured party to take such reasonable steps as are within his power to reduce the damages"—not eliminate, but reduce the damages—" or to lessen them or to avoid them as a reasonably prudent man would take in like circumstances."